UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEREMY G.,

                              Plaintiff,

                v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                              Defendant.

_____

<u>DECISION AND ORDER</u>

21-CV-6278DGL

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On July 5, 2018, plaintiff filed applications for a period of disability and disability insurance benefits, alleging an inability to work since November 1, 2016. (Administrative Transcript, Dkt. #5 at 15). His applications were initially denied. Plaintiff requested a hearing, which was held April 3, 2020 via teleconference before Administrative Law Judge ("ALJ") Sujata Rodgers. The ALJ issued an unfavorable decision on April 28, 2020. (Dkt. #5 at 15-24). That decision became the final decision of the Commissioner when the Appeals Council denied review on January 28, 2021. (Dkt. #5 at 1-3). Plaintiff now appeals.

The plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) and requests remand of the matter for the calculation and payment of benefits, or in the alternative for further proceedings (Dkt. #6), and the Commissioner has cross moved (Dkt. #7) for judgment

on the pleadings. For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, and concluded that plaintiff had the following severe impairments, not meeting or equaling a listed impairment: degenerative disc disease and obesity. (Dkt. #5 at 17).

Plaintiff was 40 years old on the alleged onset date, with a high school education and past relevant work as a packager and materials handler. (Dkt. #5 at 23). The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with no climbing of ladders, ropes and scaffolds, and no more than occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching, and crawling. Plaintiff must avoid concentrated exposure to hazards such as heavy machinery, moving mechanical parts, and unprotected heights. He can no more than frequently handle and finger with both hands. (Dkt. #5 at 21).

When presented with this RFC as a hypothetical at the hearing, vocational expert Jane A. Gerrish testified that such an individual could not return to plaintiff's past relevant jobs, which were performed at the medium and heavy exertional levels, but could perform the sedentary

unskilled jobs of charge account clerk, final assembler, and addresser. (Dkt. #5 at 23-24). The ALJ accordingly found plaintiff not disabled.

## I.    Medical Opinions of Record

Plaintiff contends that the ALJ erred in her assessment of the medical opinions of record, and that the ALJ's failure to properly weigh the persuasiveness of those opinions, and/or incorporate them into her RFC finding, resulted in an RFC determination that was unsupported by substantial evidence, and constituted the substitution of layperson opinion for competent medical opinion.

The Court concurs.

Pursuant to recent amendments to agency regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider all medical opinions in light of five factors: (1) supportability; (2) consistency with other evidence of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive he or she finds the medical opinions of record, and must specifically explain how the supportability and consistency factors were weighed. *See Salleh D. v. Commissioner*, 2022 U.S. Dist. LEXIS 427 at *9-*11 (W.D.N.Y. 2022). "Although an ALJ may afford various weights to portions of a medical source opinion, the ALJ is still required to provide reasoning to support [his

or] her various weight determinations," in order to permit meaningful judicial review. *Yasmine P. v. Commissioner*, 2022 U.S. Dist. LEXIS 154176 at *10 (W.D.N.Y. 2022).

A.      **Dr. Pardee's Medical Opinion**

The record contained just one medical opinion from a treating physician – that of plaintiff's treating neurologist, Dr. Lawrence Pardee. (Dkt. # 5 at 322-26).

Dr Pardee opined, based on a two-year history of examinations every 3-6 months, that plaintiff suffered from neuropathic pain and restless leg syndrome, which would persist indefinitely, and cause "uncomfortable tingling and burning in feet . . . tingling in fingers, [and] drop[ping of] objects." (Dkt. #5 at 322). He opined that based on plaintiff's pain, decreased sensation, antalgic gait, reduced lower extremity reflexes, and irritability caused by medication, his symptoms would frequently interfere with his attention and concentration, making him capable of only low stress jobs. *Id*.

Dr. Pardee indicated that plaintiff could not walk any distance without rest or severe pain, could sit for no more than 30 minutes at a time for up to 2 hours total in an 8-hour workday, could stand for no more than 5 minutes at a time, and could stand/walk for less than 2 hours total in an 8-hour workday. Further, plaintiff required walking breaks for 5 minutes after every 30 minutes of sitting/standing, required the ability to change positions at will and take unscheduled breaks, and needed to elevate his legs 80% of the time when sitting. He could occasionally lift up to 10 pounds, could never twist, stoop, crouch, or climb ladders or stairs, could not engage in any fine manipulations with his fingers or grasp with his hands, and was limited to overhead reaching with his right arm no more than 25% of the time, and with his left arm 10% of the time. Finally, his symptoms would cause him to miss more than 4 days of work per month. (Dkt. #5 at 322-26).

The ALJ found Dr. Pardee's opinion "not . . . persuasive," characterizing it as incompatible with plaintiff's negative electromyograph ("EMG") and nerve conduction velocity ("NCV") tests, lack of evidence of strength deficits, and unspecified examination findings. (Dkt. #5 at 22).

This explanation is insufficient. The ALJ does not describe how findings of full strength or negative EMG/NCV tests contradicted any of the limitations opined by Dr. Pardee to account for plaintiff's neuropathic pain and numbness in his extremities. Indeed, because plaintiff's pain was attributed to a disorder of the cervical spinal cord (Dkt. #5 at 269, 274, 290), EMG/NCV tests would not necessarily be expected to be positive.[1]

The ALJ's interpretation of the meaning of plaintiff's negative EMG/NCV test results amounted to the improper substitution of layperson opinion for competent medical opinion. *See Sandusky v. Saul*, 2020 U.S. Dist. LEXIS 91295 at *30 n.7 (D. Conn. 2020)(ALJ erred by resting his RFC determination on a physician's reference to a claimant's "normal" EMG results, because "the ALJ cannot translate that interpretation of the [physician's] report into an assessment of the plaintiff's functional capacity to sit, stand, walk and lift . . . a medical source's opinion is necessary to interpret such results")(citing *Brauer v. Commissioner*, 2019 U.S. Dist. LEXIS 117127 at *14-*15 (W.D.N.Y. 2019)); *Kelsey v. Colvin*, 2015 U.S. Dist. LEXIS 7701 at *32 n. 23 (ALJ erroneously substituted layperson opinion for competent medical evidence when he relied on normal EMG and NCV findings as a basis to reject opined limitations, because "normal EMH and NCV findings may rule out certain sources of debilitating pain, but professional medical opinion is necessary to inform an [ALJ] or reviewing court as to whether other sources may yet persist").

---

[1] According to Merck, EMG and NCV tests can help to determine whether weakness is due to a specific nerve, muscle, or neuromuscular junction disorder. http://www.merckmanuals.com/professional/neurologic-disorders/neurologic-tests-and-procedures/electromyography-emg-and-nerve-conduction-studies.com (last visited June 6, 2023). However, a negative NCV test result does not rule out nerve damage: if the nerves affected are small and don't have a myelin sheath, or if an individual's disorder is limited to the brain, spinal cord, spinal nerve roots, and/ or muscle, an NCV result may be normal/negative.

Furthermore, the ALJ's observation that Dr. Pardee's opinion was inconsistent with "examination findings" was unduly vague, and to the extent the ALJ was referring to Dr. Pardee's own observations, appears to be somewhat of a mischaracterization. Dr. Pardee's examination findings, which included indications of neuropathic pain, slow and guarded gait, antalgic gait, decreased sensation in the hands, arms, feet, and legs, lack of position sense, trace or absent reflexes, use of a cane, and complaints of dizziness and memory problems as medication side effects, were not inconsistent with his opinion that plaintiff, inter alia, required the use of a cane, would have difficulty lifting and carrying over 10 pounds and engaging in postural activities, and was significantly limited in the use of his hands. (Dkt. #5 at 242-43, 286-87, 288-89, 290-91).

As such, the ALJ's rejection of Dr. Pardee's opinion on the grounds of its "inconsistency" with objective findings and clinical test results was improperly grounded upon factual errors and layperson interpretation of raw medical findings.

**B.      Dr. Benivegna's Opinion**

The record also contained one opinion by an examining physician. Consulting internist Dr. Richard Benivegna examined plaintiff on August 30, 2018. (Dkt. #5 at 230-35). He noted antalgic gait, inability to walk on heels and toes or squat due to foot pain, use of a cane for ambulation and balance which Dr. Benivegna noted was "self-prescribed, [but appeared] to be medically necessary" except for very short distances, limited lumbar spinal range of motion, positive supine straight leg raising tests, limited hip and knee flexion, mid-foot tenderness, decreased sensation bilaterally, and slow and "not especially fluid" fine motor activity of the hands. (Dkt. #5 at 232-33).

Dr. Benivegna opined that plaintiff would have mild to moderate limitations for prolonged sitting, standing, walking, stair climbing, bending, kneeling, squatting, heavy lifting, carrying, and

pushing and pulling. He had moderate limitations with respect to handling and fingering, and should avoid unprotected heights. (Dkt. #5 at 234).

The ALJ found Dr. Benivegna's opinion "partially persuasive" due to its consistency with unspecified medical evidence of record, but rejected the idea of moderate limitations in handling and fingering, finding them inconsistent with plaintiff's full strength and range of motion in his upper extremities, and negative EMG and NCV tests. (Dkt. #4 at 22).

Again, the ALJ appears to have substituted her own layperson interpretation of raw medical findings for competent medical opinion, in concluding that Dr. Benivegna's assessment of moderate limitations in handling and fingering, based on findings of decreased sensation in the bilateral arms and hands, and apparent limitations in performing fine finger manipulations, was somehow contradicted by the fact that plaintiff had full strength and range of motion in his arms. Nonetheless, without explanation or resort to any medical opinion, the ALJ determined that plaintiff could "frequently" handle and finger.[2] This was error.

Because the ALJ's incorporation of some or all of the limitations opined by Dr. Pardee and Dr. Benivegna had the potential to change the ultimate finding of disability, remand is necessary. Since the record does not otherwise contain persuasive proof of disability, remand for further proceedings, rather than the calculation and payment of benefits, is the appropriate remedy.

---

[2] In making her RFC determination, the only opinion the ALJ found "persuasive" was that of reviewing agency physician Dr. R. Abueg, which was not only rendered by a non-examining physician, but contained internal inconsistencies that undermined its supportability and consistency, which the ALJ may have overlooked. For example, Dr. Abueg found Dr. Benivegna's opinion to be "fully supported by overall subjective medical evidence" (Dkt. #5 at 60), and claimed to have formulated an RFC opinion that was consistent with it (Dkt. #5 at 63), yet Dr. Abueg's RFC opinion failed to include a number of the limitations opined by Dr. Benivegna, including any manipulative limitations. The ALJ's adoption of Dr. Abueg's RFC opinion, almost *verbatim*, perpetuated the error.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #6) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #7) is denied, and this matter is remanded for further proceedings.

On remand, the ALJ is directed to reconsider the medical opinions of record, with due deference to, and discussion of, the supportability and consistency factors, and to render a new decision.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated:  Rochester, New York
        June 20, 2023.

8